IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROXIE ANN KUHNS,

        Plaintiff,

      v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

        Defendant.

No. 6:17-cv-00166-HZ

OPINION & ORDER

Drew L. Johnson
Sherwood J. Reese
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, Oregon 97401

        Attorneys for Plaintiff

Billy Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Martha A. Boden
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

        Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Roxie Ann Kuhns brings this action for judicial review of the Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The issues before the Court are whether the Administrative Law Judge ("ALJ") erred by: (1) discounting Plaintiff's symptom testimony; (2) discounting the opinion of Fred Weisensee, M.D., Plaintiff's primary-care provider; (3) discounting the opinions of Licensed Clinical Social Workers ("LCSW") Tanya Thompson and Carolyn Moore; and (4) discounting the lay-witness testimony of Ellen Kuhns, Plaintiff's daughter. Because the ALJ improperly discredited testimony that, when credited as true, would warrant awarding benefits, the Court reverses the Commissioner's final decision and remands this case for an immediate award of benefits.

## BACKGROUND

Plaintiff applied for SSI on September 29, 2011, alleging a disability onset date of September 28, 2009. Tr. 146, 530.[1] Plaintiff's application was denied initially and upon reconsideration. Tr. 62–70. Plaintiff's first administrative hearing was held on July 24, 2013, before Administrative Law Judge Elizabeth Watson. Tr. 27. ALJ Watson denied Plaintiff's claim in a written decision issued on August 13, 2013. Tr. 12–21. The Appeals Council denied review, rendering ALJ Watson's decision final. Tr. 1–4.

United States Magistrate Judge John V. Acosta reversed the Commissioner's decision and remanded the case for further administrative proceedings on February 8, 2016. Tr. 583–94. *See also Kuhns v. Colvin*, No. 6:15-cv-00430-AC, 2016 WL 520981 (D. Or. Feb. 8, 2016). Judge Acosta found ALJ Watson erred when she discredited Plaintiff' symptom testimony and the lay

---

[1] "Tr." refers to the administrative record transcript, filed here as ECF 11.

2 – OPINION & ORDER

testimony of four of Plaintiff's friends and family members (including Ellen Kuhns) without providing legally sufficient reasons for doing so. Tr. 587–91. Judge Acosta, however, noted the "record as a whole creat[ed] serious doubt that plaintiff is, in fact, disabled" because the consultative nonexamining physicians found Plaintiff capable of performing medium-exertional work. Tr. 593. Accordingly, Judge Acosta remanded the matter to the Commissioner to "resolve the conflict between plaintiff's testimony, the lay opinion evidence, and the opinions of the consultative physicians." Tr. 593.

In the meantime, on March 17, 2015, Plaintiff filed subsequent applications for SSI and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Tr. 530. At the remand hearing on September 20, 2016, however, Plaintiff voluntarily dismissed her DIB application, and the SSI application was consolidated with her original September 29, 2011, application. Tr. 527, 530–31. ALJ Katherine Weatherly presided over Plaintiff's remand hearing. Tr. 527. ALJ Weatherly, however, also determined Plaintiff was not disabled from the September 29, 2011, alleged onset date, until January 23, 2016. Tr. 505–19. As of January 23, 2016, however, ALJ Weatherly found Plaintiff to be disabled. Tr. 518–19.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 28, 2009. Tr. 508.

At step two, the ALJ determined Plaintiff had the following severe impairments: status-post right shoulder SLAP repair; fibromyalgia; chronic left hip pain; left hip bursitis; degenerative disc disease at L4–5; mild cervical degenerative disc disease; status-post left small finger removal of deep hardware and extensor tenolysis; asthma; depressive disorder, not otherwise specified; post-traumatic stress disorder; headaches; and migraine headaches. Tr. 508–10.

At step three, the ALJ found Plaintiff's impairments or combination of impairments did not meet or equal the severity of one of the listed impairments. Tr. 510–11.

Before step four, the ALJ determined Plaintiff had the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can frequently push or pull bilaterally. Additionally, she can engage in occasional foot control operation with the left. She can occasionally climb ramps or stairs. The claimant can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. The claimant can occasionally reach overhead with the right upper extremity. She can frequently handle objects with the left hand. The claimant should avoid all exposure to irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. The claimant should also avoid all exposure to operational control of moving machinery, hazardous machinery and, unprotected heights. The claimant can understand and carry out simple routine repetitive tasks.

Tr. 511–12.

At step four, the ALJ determined Plaintiff has been unable to perform any past relevant work as a heavy packer/lifter, cannery worker, or home attendant since September 28, 2009. Tr. 517.

At step five, the ALJ concluded that other jobs existed in the national economy that Plaintiff could perform prior to January 23, 2016, including work as a charge account clerk, call-out operator, and order clerk. Tr. 517–18. The ALJ found, however, that beginning on January 23, 2016, there were not any jobs existing in the national economy that Plaintiff could perform.

5 – OPINION & ORDER

Tr. 518. Accordingly, the ALJ concluded Plaintiff was not disabled before January 23, 2016, but became disabled as of that date. Tr. 519.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ's decision was not supported by substantial evidence and contains legal errors. In particular, Plaintiff argues the ALJ made the following four errors. First, the ALJ improperly discredited Plaintiff's subjective symptom testimony. Second, the ALJ improperly discredited the opinion of Dr. Weisensee, Plaintiff's treating primary-care provider. Third, the ALJ improperly discredited the opinions of LCSWs Thompson and Moore. Finally, the ALJ improperly discredited the lay testimony of Ellen Kuhns, Plaintiff's daughter.

## I. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ improperly rejected her testimony regarding the severity and extent of her limitations. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm. Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

As the Ninth Circuit further explained in *Molina*;

> While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (internal citations and quotation marks omitted).

Judge Acosta summarized Plaintiff's testimony during the initial hearing and in the initial application as follows:

> At the administrative hearing plaintiff testified that she is in pain "all day long" due to fibromyalgia. (Tr. 48-49.) She testified that she attempted to work for a friend for a year but was let go due to poor attendance. (Tr. 34.-35.) Plaintiff explained that her attendance was poor due to fibromyalgia pain, difficulty breathing, and fatigue, stating that she "can't keep a job" due to her symptoms. *Id.* She stated that she did not know whether she would have the energy to perform work with a sit-stand option, but testified that she would be "outrageously in pain" if she worked a full eight hours at even an easy job. (Tr. 48-49.) In a statement to the Agency on December 10, 2011, plaintiff also reported constant pain, dizziness, and shortness of breath every day. (Tr. 176.)

Tr. 587–88. *See also Kuhns*, 2016 WL 520981, at *3. At that time the ALJ discredited Plaintiff's symptom testimony on the basis that Plaintiff made inconsistent statements regarding her symptoms and limitations, Plaintiff failed to comply with treatment recommendations, and Plaintiff's testimony was not supported by the medical record. Tr. 588–90. *See also Kuhns*, 2016 WL 520981, at *3–*4. Judge Acosta, however, found these reasons were not clear and convincing reasons, supported by substantial record evidence to discredit Plaintiff's testimony. Tr. 590. *See also Kuhns*, 2016 WL 520981, at *5. Accordingly, Judge Acosta remanded the matter to the Commissioner in part on that basis.

At the September 20, 2016, hearing on remand, Plaintiff testified her daughter acts as her caregiver. Tr. 534. Plaintiff indicated she is unable to get out of bed in the morning "at least once a week" due to her fibromyalgia, and that she is only able to walk approximately one-eighth of a mile with the help of her daughter or a cane. Tr. 537–38, 543. In addition, Plaintiff testified she suffers from "amazingly painful" symptoms as a result of chronic bursitis in her hip and arthritis. Tr. 539.

Plaintiff also stated she suffers from headaches "between four and seven times a month" that only subside after she takes medication and sleeps for approximately two-and-a-half hours. Tr. 540–41. Plaintiff indicated she has suffered from the headaches for "[a]t least four years." Tr. 542. Plaintiff also stated she also suffers from "constant dizziness." Tr. 541.

Plaintiff testified on a typical day she wakes up, eats breakfast, and takes her morning medication with the assistance of her daughter. Tr. 545. Plaintiff stated she watches television and plays with her pets, including two medical-assistance dogs and nine cats. Tr. 545–46. Plaintiff testified she must lie down for at least 15 minutes approximately four times per day. Tr. 547–49. Plaintiff indicated she is unable to complete household chores and only goes shopping with her daughter's help. Tr. 547–48.

Plaintiff contends ALJ Weatherly erred when she did not provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony, in particular with respect to her need to lie down during the day and work absences caused by Plaintiff's headaches.

The ALJ did not explicitly provide any reasons for discrediting Plaintiff's testimony. "Because the 'grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based,' the agency must explain its reasoning." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Sec. and Exch.*

*Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). The ALJ, therefore, must "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). *See also Treichler*, 775 F.3d at 1102. In this case the ALJ failed to identify the testimony that she did not find credible and explain what evidence undermined that testimony.

On this record, therefore, the Court concludes the ALJ erred when she discredited Plaintiff's testimony without providing legally sufficient reasons for doing so.

## II.     Dr. Weisensee's Opinion

Plaintiff next contends the ALJ erred when she discredited the opinion of Dr. Weisensee, Plaintiff's primary-care provider.

Social security law recognizes three types of physicians: (1) treating; (2) examining; and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). Moreover, more weight is given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61.

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). And, when a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. § 416.927(c)(2)–(6). *Ghanim*, 763 F.3d at 1161; *Orn*, 495 F.3d at 632–33.

On December 7, 2012, Dr. Weisensee submitted an opinion that provided, in whole: "Patient is currently unable to work due to her health condition. If you have any questions, please do not hesitate to contact me." Tr. 487. The ALJ gave Dr. Weisensee's opinion "little weight" because Dr. Weisensee "did not provide an explanation as to his reasons for concluding the claimant was unable to work in December 2012." Tr. 515. Because Dr. Weisensee's opinion was contradicted by the opinion of examining physician Marc Musson, D.O. (Tr. 1061–65), the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for discrediting Dr. Weisensee's opinion. *See Ghanim*, 763 F.3d at 1161.

An ALJ may discredit medical testimony on the basis that it "'do[es] not contain any explanation of the bases of the[] conclusions.'" *Molina*, 674 F.3d at 1111 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). In this case, Dr. Weisensee did does not provide any explanation for the basis of his opinion that Plaintiff is unable to work, and did not identify the conditions and resulting limitations that render Plaintiff disabled. The ALJ provided specific and legitimate reasons to discredit Dr. Weisensee's opinion.

On this record, therefore, the Court concludes the ALJ did not err when she discredited Dr. Weisensee's opinion.

**III.     Opinions of Tanya Thompson, LCSW, and Carolyn Moore, LCSW**

Plaintiff next argues the ALJ erred when she discredited the opinions of Tanya Thompson, LCSW, and Carolyn Moore, LCSW.

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902. Medical sources classified as "not acceptable" or "other sources" include, but are not limited to, nurse practitioners, therapists, LCSWs, and chiropractors. SSR 06-03p, at *2. As LCSWs, Thompson and Moore are considered "other sources." *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1223–24 (9th Cir.2010) (social workers are not considered an "acceptable medical source" but are "other sources" under the regulations). Under Ninth Circuit law, evidence from "other sources" is considered under the same standard as that used to evaluate lay-witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina*, 674 F.3d at 1111 (because a physician's assistant was not an acceptable medical source, ALJ could discount physician's assistant's opinion for germane reasons); *see also Sauvageau v. Colvin*, No. 3:14–cv–01932–AA, 2016 WL 1222245, at *5–6 (D. Or. Mar. 25, 2016) (social worker is deemed a non-medical "other source"; affirming ALJ's rejection of social worker's opinion because ALJ provided reasons germane to the witness in support).

Thompson conducted an initial mental-health assessment on November 13, 2013, when Plaintiff initiated treatment with Linn County Mental Health. Tr. 494–96. Thompson noted Plaintiff reported "a loss of health and functioning the past few years. This makes her feel depressed, anxious, overwhelmed. It has affected her ability to function." Tr. 495. Thompson

diagnosed Plaintiff with an adjustment disorder with mixed anxiety and depression, and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 38. Tr. 495. Thompson noted Plaintiff was not employable "for physical or psychological reasons." Tr. 495.

Moore treated Plaintiff at Linn County Mental Health beginning in November 2013 and concluding in September 2014 when Plaintiff terminated her mental-health treatment without explanation. Tr. 496, 1079–80. At the time that Moore issued a Discharge Summary for Plaintiff, Moore diagnosed Plaintiff with an adjustment disorder and post-traumatic stress disorder. Tr. 1079. Moore assessed Plaintiff as having a GAF score of 39. Tr. 1079.

The ALJ gave no weight to the opinions of Thompson and Moore because they "are not considered acceptable medical sources under the Social Security Regulations." Tr. 516. The fact that Thompson and Moore, as LCSWs, were "other sources," only changes the standard that the ALJ must meet to discredit their testimony; it does not, by itself, provide a basis for discrediting Moore and Thompson's opinions.

On this record, therefore, the Court finds the ALJ erred when she discredited the opinions of Thompson and Moore without providing legally-sufficient reasons for doing so.

**IV.     Lay Testimony of Ellen Kuhns**

Finally as noted, Plaintiff argues the ALJ erred when she discredited the lay testimony of Ellen Kuhns, Plaintiff's daughter.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay-witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for discounting such testimony. *Molina*, 674 F.3d at 1114. Germane reasons must be

specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053). Germane reasons for discounting lay-witness testimony include: conflicts with medical evidence and inconsistency with the plaintiff's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001). Another germane reason to discredit lay testimony is that it is substantially similar to the claimant's validly discredited allegations. *Valentine*, 574 F.3d at 694.

On December 11, 2011, Ellen Kuhns, Plaintiff's daughter who lives with Plaintiff, submitted a Third Party Adult Function Report in which she set out her testimony regarding Plaintiff's conditions and functional capabilities. Tr. 185–92. Ellen Kuhns stated it takes Plaintiff two to three hours to start her day, and that in a typical day she washes dishes, takes her dogs out, watches television, naps, and eats. Tr. 186. Ellen Kuhns indicated Plaintiff does not sleep well and alternatively suffers from insomnia or will "sleep for days." Tr. 186 Ellen Kuhns reported Plaintiff cooks her own meals for between 15 and 45 minutes per day, but that she no longer cooks large meals, and is able to wash dishes, water the garden, vacuum and "tidy" her house. Tr. 187. Ellen Kuhns also stated Plaintiff is capable of leaving the house alone, "[b]ut usually doesn't." Tr. 1888. Ellen Kuhns indicated Plaintiff is limited in her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, remember, complete tasks, concentrate, use her hands, and get along with others. Tr. 190. Ellen Kuhns reported Plaintiff is only able to walk one block before needing five to 15 minutes of rest. Tr. 190.

The ALJ did not specifically discuss Ellen Kuhns' opinion, but stated generally that she gave "limited weight" to the lay opinions because they "fail to provide clear evidence of the claimant's capacity at particular times" and because the lay witnesses were not medical experts and "only provided their beliefs as the cause of any restrictions." Tr. 516. These reasons, however, do not provide a sufficient basis to discredit Ellen Kuhns' testimony. Contrary to the

ALJ's general statement, Ellen Kuhns' testimony provides a clear statement of Plaintiff's functionality from her perspective as Plaintiff's daughter and an individual who lives with and sees Plaintiff on a daily basis. Although the ALJ was correct that Kuhns did not have medical expertise, "[t]he witness's lack of medical expertise is, by definition, why it is considered lay witness testimony." *Burlingham v. Comm'r Soc. Sec. Admin.*, No. 3:13-cv-01030-MA, 2014 WL 2213333, at *5 (D. Or. May 28, 2014). Because "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify" as to the claimant's condition, the mere lack of medical expertise is not a proper basis on which to discredit Ellen Kuhns' testimony as to Plaintiff's everyday symptoms and functioning. *Dodrill*, 12 F.3d at 918.

On this record, therefore, the Court concludes the ALJ erred when she discredited the testimony of Ellen Kuhns because she failed to provide legally sufficient reasons for doing so.

**V.     Remand**

Because the Court concludes the ALJ's decision contained harmful legal errors and was not supported by substantial evidence in the record, the remaining question is whether this case should be remanded for further administrative proceedings or an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The Ninth Circuit applies the "credit-as-true" rule for determining whether remand for an immediate award of benefits is proper. *Garrison*, 759 F.3d at 1020. Each of the following must be satisfied to justify an immediate award of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly where the record as a whole creates serious doubts that the claimant is disabled. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

Regarding the first factor, the Court finds that the record in this case—after reaching the District of Oregon for the second time—has been fully developed. Judge Acosta directed the Commissioner to reconsider the ALJ's assessment of Plaintiff's testimony and the lay testimony on remand. In light of the additional opportunity afforded to the Commissioner to develop the record, and the Commissioner's repeated failure to provide legally sufficient reasons to discredit the testimony of Plaintiff and Ellen Kuhns, in particular, there is not any basis to conclude further development of the record is necessary. With respect to the second factor, as noted the Court concludes the ALJ failed to provide legally sufficient reasons for discrediting the opinions of Plaintiff; Tanya Thompson, LCSW; Carolyn Moore, LCSW; and Ellen Kuhns. Regarding the third factor, the Court concludes the ALJ would be required to find Plaintiff disabled on remand if the erroneously discredited testimony was credited as true. Moreover, after a complete review of the record, and particularly in light of the Commissioner's repeated failure to provide legally sufficient reasons to discredit Plaintiff's testimony and the lay testimony of Ellen Kuhns, the Court does not find the record as a whole creates serious doubt that Plaintiff is disabled and has been disabled since the alleged onset date of September 29, 2011.

Furthermore, a second remand for additional administrative proceedings would allow "the Commissioner to decide the issue again and create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2012) (citing *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004)). "Remanding a disability claim for further proceedings can delay much needed income for claimants who are

unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" *Benecke*, 379 F.3d at 595 (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d. 1396, 1398 (9th Cir. 1998)). Because Plaintiff is already of an advanced age and has now experienced a six-year delay in her application, any further remand of this case would unfairly delay effectuating the purpose of the Act and cause Plaintiff financial hardship.

## CONCLUSION

For these reasons, the Commissioner's decision is reversed and remanded for an immediate award of benefits.

IT IS SO ORDERED.

DATED this 12 day of February, 2018.

_____
MARCO A. HERNÁNDEZ
United States District Judge